```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
 JOSEPH TAORMINA,                                              :
                                                               :
                               Plaintiff,                      :
                                                               :
                      -against-                                :
                                                               :
 THRIFTY CAR RENTAL and THE HERTZ                              :
 CORPORATION,                                                  :
                                                               :
                               Defendants.                     :
-------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/21/2016

16-CV-3255 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

A car rental snafu occurred, and this lawsuit followed. Plaintiff Joseph Taormina has sued Thrifty Car Rental ("Thrifty") and The Hertz Corporation ("Hertz") for defamation, breach of contract, and a mandatory injunction. Thrifty and Hertz removed the case to federal court, and Hertz moved to dismiss the Complaint for lack of personal jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). For the following reasons, this Court GRANTS Hertz's motion to dismiss the Complaint.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

In March 2014, Taormina rented a car from Thrifty's location at the Fort Lauderdale airport. Verified Complaint (hereafter, "Compl."), Dkt. 1-1 ¶ 5. Although Taormina returned that car, Thrifty asserted that the car had not been returned and threatened criminal charges as a result. Compl. ¶¶ 7, 9–10. After some back and forth between counsel, Hertz's Senior Corporate Counsel acknowledged to Taormina's counsel that Taormina was "not responsible"

---

[1] The following facts are taken from the Complaint and are assumed to be true.

for the vehicle and represented that collection activity against Taormina had been halted.  Compl. ¶¶ 15–17.  Taormina subsequently received a letter from a collection agency, National Commercial Services, Inc. ("NCS"), claiming a balance of $11,850.64 for a vehicle that was not the vehicle that Taormina had rented.  Compl. ¶¶ 18–24.  The NCS letter stated that NCS was "working in conjunction with Thrifty Car Rental as a third party administrator."  Compl. ¶ 18.  NCS also sent Taormina's counsel a separate letter indicating that it had been retained by Hertz.  Compl. ¶¶ 25–26.  A Hertz supervisor later emailed Taormina's counsel, apologizing "for this situation" and stating that "we have closed this file as invalid and will no longer be pursuing.  I have advised NCS to close their file immediately."  Compl. ¶ 28.

In February 2016, Taormina reserved a rental car using Hertz's website.  Compl. ¶ 29.  When Taormina attempted to pick up the car in Florida, a Hertz agent refused to rent the car because Taormina's license information prompted the message "DO NOT RENT" in the Hertz rental system.  Compl. ¶ 30.  Taormina alleges that he "was mortified in public and forced to go to another rental agency to secure a vehicle."  Compl. ¶ 30.

Notably, almost all of the factual allegations in the Complaint reference actions taken by *Thrifty*, not Hertz.  The only allegations that reference Hertz are as follows:

- Taormina's counsel and Hertz's Senior Corporate Counsel corresponded regarding "the harassment Taormina was being subjected to by representatives of Thrifty," Compl. ¶¶ 15–16;

- Hertz's counsel informed Taormina's counsel that Taormina was "not responsible and all collection activity against him has been stopped," Compl. ¶ 17;

- an NCS representative sent Taormina's counsel a November 2015 letter from Hertz stating that NCS had "been retained by the Hertz Corporation," Compl. ¶ 26;

- Taormina's counsel sent the NCS representative and Hertz's Senior Corporation Counsel his file of documents relating to the "harassment of Taormina," Compl. ¶ 27;

- a Hertz supervisor "apologized 'for this situation'" and informed Taormina's counsel that "'we have closed this file as invalid and will no longer be pursuing. I have advised NCS to close their file immediately.'" Compl. ¶ 28;

- Taormina used the Hertz website in February 2016 to reserve a rental car to be picked up at the Palm Beach airport, Compl. ¶ 29; and

- a Hertz agent refused to rent to Taormina after receiving the message "DO NOT RENT" in the Hertz rental system. Compl. ¶ 30.

Other than alleging that Thrifty and Hertz "are wholly owned by Hertz Global Holdings, Inc.,"[2] Compl. ¶ 4, Taormina does not allege any corporate relationship between Thrifty and Hertz.

Taormina sued Thrifty and Hertz in state court, claiming defamation and breach of contract and requesting a mandatory injunction requiring Defendants to issue "corrections, deletions and apologies with respect to all the harmful statements they have published about Plaintiff." Compl. at 9. Asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332, Thrifty and Hertz removed the case to federal court. Hertz then moved to dismiss the Complaint for lack of personal jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## DISCUSSION

### I. Subject Matter Jurisdiction

Before a federal court may reach the merits of a motion to dismiss, the court first must establish that it has jurisdiction to do so. *Fracasse v. People's United Bank*, 747 F.3d 141, 143 (2d Cir. 2014). Pursuant to 28 U.S.C. § 1332(a), federal district courts have original jurisdiction

---

[2] Hertz Global Holdings, Inc., is not a party in this action.

3

over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." The amount in controversy is measured "as of the date of the complaint. Once jurisdiction has attached, it cannot be ousted by subsequent events." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003).

Taormina is a citizen of New York. Notice of Removal to United States District Court from the Supreme Court of the State of New York County, County of New York (hereafter, "Notice of Removal"), Dkt. 1 ¶ 2. Hertz and Thrifty are both Delaware corporations with their principal places of business in Florida. Notice of Removal ¶ 2; Declaration of Adam Schloss, Esq., Dkt. 15 ¶¶ 2–3. For the defamation claim, Taormina alleges: special damages in the amount of $5,000,000; reputational and emotional distress damages in the amount of $100,000; and punitive damages in the amount of $10,000,000. Compl. ¶¶ 39–41. For the breach of contract claim, Taormina alleges $100,000 in damages plus punitive damages. Compl. ¶ 46. Because there is complete diversity, and Taormina claims an amount in controversy exceeding $75,000,[3] this Court has diversity jurisdiction over the case.

---

[3] There is a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer*, 347 F.3d at 397 (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)). Overcoming this presumption is a "high bar," *id.* at 397, and to do so, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Wolde-Meskel*, 166 F.3d at 63 (internal marks and citation omitted). "In determining whether a complaint appears to a 'legal certainty' to assert claims for less than the jurisdictional amount, the Court is required to aggregate all of the plaintiff's claims." *Graubart v. Jazz Images, Inc.*, No. 02-CV-4645, 2006 WL 1140724, at *4 (S.D.N.Y. April 27, 2006) (quoting *Wolde-Meskel*, 166 F.3d at 62). A plaintiff may aggregate—or add up—the value of all of his claims against a defendant to satisfy the amount-in-controversy requirement. JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 102.108[1] (3rd ed. 2016); *Wolde-Meskel*, 166 F.3d at 62.

Although the Court is sympathetic to the Plaintiff's travails with Thrifty and Hertz, it is also deeply skeptical that his claims involve damages in excess of $75,000. Nevertheless, because that does not appear to a legal certainty to be the case, the Court accepts the Complaint's good-faith representation that the amount in controversy meets the jurisdictional minimum.

II. **Personal Jurisdiction**

A federal court also must have personal jurisdiction over a defendant before the court may adjudicate the merits of a case. *See, e.g.*, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). There are two types of personal jurisdiction: specific and general. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). Specific jurisdiction, also called "case-linked" jurisdiction, "is available when the cause of action . . . arises out of the defendant's activities in a state." *Id.* General jurisdiction, or "all-purpose" jurisdiction, "permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Id.* Regardless of whether personal jurisdiction is specific or general, "the exercise of personal jurisdiction over a defendant is informed and limited by the U.S. Constitution's guarantee of due process, which requires that any jurisdictional exercise be consistent with 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). "In particular, constitutional due process principles generally restrict the power of a state to endow its courts with personal jurisdiction over foreign corporate parties—that is, entities neither organized under the state's laws nor operating principally within its bounds—with regard to matters not arising within the state." *Id.* at 625.

To survive a motion to dismiss for lack of personal jurisdiction, the "plaintiff bears the burden of establishing personal jurisdiction over the defendant." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). "A plaintiff can make this showing through his own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant. Where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's

5

favor." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (internal quotation marks, alterations, and citations omitted). Where, as here, the motion to dismiss is decided on the basis of the pleadings and affidavits (and not on the basis of an evidentiary hearing), the plaintiff need make only a *prima facie* showing that jurisdiction exists. *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008).

### A. Specific Jurisdiction

Because specific jurisdiction is claim-specific, a court must have specific jurisdiction over each of the Plaintiff's claims. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) ("A plaintiff must establish the court's jurisdiction with respect to *each* claim asserted."). A federal court sitting in diversity first examines whether the exercise of personal jurisdiction is permitted by the forum State's long-arm statute. *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015). "If the long-arm statute permits personal jurisdiction, we analyze whether personal jurisdiction comports with due process protections established under the Constitution." *Id.*

As is relevant here, New York's long-arm statute, C.P.L.R. § 302(a), confers personal jurisdiction over any non-domiciliary who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state.
N.Y. C.P.L.R. § 302(a)(1). Although New York generally extends personal jurisdiction for torts committed outside the state that cause injury inside the state and for torts committed inside the state, defamation claims are an exception. N.Y. C.P.L.R. §§ 302(a)(2)–(3); *Best Van Lines v. Walker*, 490 F.3d 239, 244–45 (2d Cir. 2007) (discussing the exclusion of defamation from sections 302(a)(2) and 302(a)(3)). Therefore, the exercise of specific jurisdiction relative to

Plaintiff's defamation claim is permitted only through C.P.L.R. § 302(a)(1).[4]  *See Best Van Lines*, 490 F.3d at 245–46 ("Under New York law, when a person utters a defamatory statement without the state that causes injury to the plaintiff within the state, jurisdiction may be acquired under section 302(a)(1), even though section 302(a)(3)—which explicitly concerns jurisdiction as to out-of-state tortious acts that cause in-state injury—excludes defamation cases from its scope.").

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eades*, 799 F.3d at 168.  The defendant's activities must be "purposeful" such that there is a "substantial relationship between the transaction and the claim asserted." *Id.* (citation omitted).  "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (citation omitted).  Although, generally, "proof of one transaction in New York is sufficient to invoke jurisdiction" under section 302(a)(1), *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010), for defamation cases, "the 'single act' of uttering a defamation, no matter how loudly, is not a 'transact[ion of] business' that may provide the foundation for personal jurisdiction." *Best Van Lines*, 490 F.3d at 248.  "[W]hen the defamatory publication itself constitutes the alleged

---

[4]     Neither of Taormina's claims arises from Hertz's possession of real property in New York, so C.P.L.R. § 302(a)(4) is not available as a basis for asserting specific jurisdiction.  Taormina's argument that the Court has *quasi in rem* jurisdiction over Hertz "as a current property owner in the State of New York," Opp. Br. at 13, is meritless.

'transact[ion of] business' for the purposes of section 302(a)(1), more than the distribution of a libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it." *Id.* (footnote omitted).

Taormina's defamation claim arises from his allegation that "Defendants published and republished the assertion that Taormina was a criminal guilty of car theft." Compl. ¶ 32. Taormina does not allege, however, that Hertz made, published, or distributed any purportedly defamatory statements in New York. The *only* Hertz-related allegations in the Complaint that are relevant to the defamation claim are that: (1) Taormina's counsel corresponded with Hertz's counsel regarding harassment by Thrifty, Compl. ¶¶ 15–16; (2) NCS emailed Taormina's counsel a letter stating that NCS had been retained by Hertz, Compl. ¶ 26; (3) Taormina's counsel forwarded to an NCS representative and Hertz's counsel his file relating to the harassment of Taormina, Compl. ¶ 27; and (4) a Hertz supervisor emailed Taormina's counsel apologizing for the situation and stating that they had closed "this file" and advised NCS to do the same, Compl. ¶ 28. These allegations fall far short of establishing that Hertz purposefully availed itself of the privilege of conducting business in New York, thereby invoking the jurisdiction of New York courts.

In arguing that specific jurisdiction exists, Taormina asserts facts in his memorandum of law that he did not allege in the Complaint or in an affidavit. For example, Taormina asserts for the first time in his brief that: Hertz published a false accusation to a third-party collection agency, Plaintiff Joseph Taormina's Memorandum of Law in Opposition to Defendant The Hertz Corporation's Motion to Dismiss Pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure (hereafter, "Opp. Br."), Dkt. 21, at 11; Hertz directed that agency to pursue Taormina in New York, Opp. Br. at 11; Taormina received defamatory letters in New York, Opp. Br. at 6;

and Hertz owns Thrifty, Opp. Br. at 6.[5] Taormina cannot supplement his Complaint with facts asserted for the first time in his memorandum of law. *See Langenberg v. Sofair*, No. 03 CV 8339 KMK, 2006 WL 2628348, at *4 (S.D.N.Y. Sept. 11, 2006) (*prima facie* showing of jurisdiction could not be made through facts asserted for the first time in a memorandum of law). Nevertheless, even if the Court were to accept as true that there was some sort of defamatory utterance or publication attributable to Hertz that took place in New York, such activity is insufficient under New York law to establish specific jurisdiction for a defamation claim. *See Best Van Lines*, 490 F.3d at 248 (specific jurisdiction for a defamation claim based upon a "defamatory publication" requires more than the "distribution of a libelous statement"). Therefore, Taormina fails to establish a *prima facie* case that this Court has specific jurisdiction over Hertz for the defamation claim.

Taormina also does not allege that any of Hertz's activities relating to the breach of contract claim occurred in New York. Relevant to the breach of contract claim, Taormina alleges only that he reserved a rental car via Hertz's website and that when he attempted to pick up that car in Florida, the Hertz agent refused to rent the car to Taormina. Compl. ¶¶ 29, 30. Taormina fails to allege, however, that the breach of contract claim arises from any activity of Hertz in New York. Taormina asserts in his opposition brief that Taormina made the reservation by accessing Hertz's website from New York, Opp. Br. at 7, 11, but he failed to allege that fact in the Complaint or in an affidavit. Furthermore, although a website may provide a basis for personal jurisdiction in some circumstances, Taormina has not alleged any facts or made any

---

[5] Elsewhere Plaintiff alleges that non-party Hertz Global Holdings, Inc., not Defendant The Hertz Corporation, owns Thrifty. Compl. ¶ 4.

arguments demonstrating that the Hertz website's level of interactivity would support the exercise of personal jurisdiction. *See Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000) ("whether the exercise of personal jurisdiction is permissible is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet" (internal quotation marks and citations omitted)). Therefore, Taormina fails to establish a *prima facie* case of specific jurisdiction over Hertz for the breach of contract claim.

### B. General Jurisdiction

Taormina also argues that the Court has general jurisdiction over Hertz because Hertz "conducts so much business in New York that it should be considered 'essentially at home'" there. Opp. Br. at 12. In the alternative, Taormina argues that Hertz consented to the exercise of general jurisdiction because Hertz is registered to do business in New York. Opp. Br. at 12–13. Both of these arguments are unpersuasive in light of *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).

Although N.Y. C.P.L.R. § 301 provides a statutory basis for asserting general jurisdiction over an out-of-state defendant, the Supreme Court in *Daimler* set a "high bar" for finding that the exercise of general jurisdiction over an out-of-state corporation is constitutional. *See Brown*, 814 F.3d at 626 (discussing *Daimler*). *Daimler* explained that to find general jurisdiction, "the inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" 134 S. Ct. at 761 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

*Daimler* explained that a corporation is "essentially at home" in either its place of incorporation or its principal place of business. *Brown*, 814 F.3d at 627. "Only in the 'exceptional' case will another jurisdiction be entitled to exercise such sweeping powers as the use of its adjudicatory authority to decide matters unrelated to its citizens or to affairs within its borders." *Id.* at 627 (citing *Daimler*, 134 S. Ct. at 761 n.19). "[A] corporation 'that operates in many places can scarcely be deemed at home in all of them.' [*Daimler*, 134 S. Ct.] at 762 n.20. And so, when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'" *Id.* at 629. In assessing an out-of-state corporation's contacts with the forum State, "we must assess the company's local activity not in isolation, but *in the context of the company's overall activity*: the general jurisdiction inquiry 'does not focus solely on the magnitude of the defendant's in-state contacts,' but 'calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.'" *Id.* (quoting *Daimler*, 134 S. Ct. at 762 n.20).

Taormina argues that the Court has general jurisdiction because Hertz "conducts so much business in New York that it should be considered 'essentially at home' in the state." Opp. Br. at 12.[6] In particular, Taormina points to Hertz's SEC filing, which states that Hertz derives "a substantial proportion of [its] revenues from key leisure destinations, including . . . New York,"

---

[6] In arguing that general jurisdiction exists, Taormina cites as evidence Hertz's SEC filing, its website, and the fact that it is registered to do business in New York. Although Taormina did not allege in the Complaint or attach to an affidavit the SEC filing or Hertz's New York business registration, the Court may take judicial notice of public records for the purposes of evaluating personal jurisdiction. *See Langenberg*, 2006 WL 2628348, at *4 (taking judicial notice of a public record in evaluating personal jurisdiction on a 12(b)(2) motion to dismiss). The Court need not take judicial notice of Hertz's website, however, because Taormina's argument regarding the website is unpersuasive for the reasons stated herein.

and Hertz's website, which lists "nearly 200 offices and locations in the State of New York." Opp. Br. at 12.  These contacts with New York, however, do not present the "exceptional case" that would give rise to general jurisdiction.  Hertz states in the same SEC filing that Florida, Hawaii, California, and Texas are also "key leisure destinations" from which Hertz derives substantial revenue.  Hertz Corp., Annual Report (Form 10-K) at 20 (Feb. 29, 2016).  And because the jurisdictional inquiry does not focus on the magnitude of the corporation's contacts in the forum State, but focuses instead on the magnitude of those contacts in the context of the entire company's activities, *Brown*, 814 F.3d at 629, the fact that Hertz has nearly 200 offices in New York is not persuasive.  Like the out-of-state corporations in both *Daimler* and *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014), Hertz has branch offices in the forum State but is incorporated and headquartered elsewhere.  Like the courts in *Daimler* and *Gucci*, this Court finds that Hertz's contacts with New York "fall far short of the relationship that Due Process requires, under *Daimler* and *Goodyear*, to permit the exercise of general jurisdiction," *Brown*, 814 F.3d at 630.

Taormina next argues that because Hertz is registered to do business in New York and has a registered agent for service of process in New York, Hertz is subject to general jurisdiction in New York by virtue of its consent.  Opp. Br. at 12–13.  Prior to *Daimler*, New York courts had held that general jurisdiction may be exercised based on a corporation's consent if the corporation had registered to do business in New York and had designated the New York Secretary of State for service of process.  *See, e.g.*, *Augsbury Corp. v. Petrokey Corp.*, 470

N.Y.S.2d 787, 789 (3rd Dep't 1983) ("The privilege of doing business in New York is accompanied by an automatic basis for personal jurisdiction.").[7]

After *Daimler*, however, the Second Circuit concluded that a foreign corporation does *not* consent to the exercise of general jurisdiction simply by registering to do business and appointing an agent under the Connecticut business-registration statutes. *Brown*, 814 F.3d at 623. The Second Circuit reasoned that in light of the "more demanding 'essentially at home' test enunciated in *Goodyear* and *Daimler* . . . federal due process rights likely constrain an interpretation that transforms a run-of-the-mill registration and appointment statute into a corporate 'consent'—perhaps unwitting—to the exercise of general jurisdiction by state courts, particularly in circumstances where the state's interests seem limited." *Id.* at 637 (footnote omitted). Although *Brown* noted that New York's registration statute "has been definitively construed" to require a corporation's consent to general jurisdiction, the Second Circuit expressly declined to answer the "more difficult constitutional question about the validity of such consent after *Daimler*." *Id.* at 640.

No appellate authority exists on whether a foreign corporation's consent to jurisdiction based solely on New York's registration statute survives *Daimler*, *see Bonkowski v. HP Hood LLC*, 15-CV-4956 (RRM) (PK), 2016 WL 4536868, at *3 (E.D.N.Y. Aug. 30, 2016), and federal district courts have expressed competing views. Supplemental Practice Commentaries, N.Y. C.P.L.R. § 301 (McKinney 2016) (comparing *Beach v. Citigroup Alt. Invs. LLC*, No. 12 Civ.

---

[7]  The fact that Hertz designated CT Corporation System, rather than the New York Secretary of State, as its registered agent for service of process, *see* Opp. Br. at 12–13, is immaterial to the Court's analysis. The New York cases concluding that a corporation's "voluntary use of certain state procedures . . . is in fact a form of constructive consent to personal jurisdiction," *Augsbury*, 470 N.Y.S.2d at 789, do not distinguish between the designation of the New York Secretary of State or another agent as the corporation's agent for service of process.

7717 (PKC), 2014 WL 904650, at *6 (S.D.N.Y. 2014) ("Notwithstanding [*Daimler* and *Goodyear*], a corporation may consent to jurisdiction in New York under CPLR § 301 by registering as a foreign corporation and designating a local agent.") with *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, No. 14-cv-8679 (CM), 2015 WL 539460, at *6 (S.D.N.Y. 2015) ("After *Daimler*, with the Second Circuit cautioning against adopting 'an overly expansive view of general jurisdiction,' *Gucci*, 768 F.3d at 135, the mere fact of [the defendant's] being registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation or its principal place of business.")). At least one New York state trial court has concluded, post-*Daimler,* that an out-of-state corporation "is deemed to have *consented* to personal jurisdiction over it when it registers to do business in New York and appoints the Secretary of State to receive process for it pursuant to Business Corporation Law §§ 304 and 1304." *Serov v. Kerzner Int'l Resorts, Inc.*, No. 162184/2015, 2016 WL 4083725 (N.Y. Sup. Ct. July 26, 2016). That court, however, relied on pre-*Daimler* cases and did not discuss the impact of *Daimler* on the viability of predicating general jurisdiction on consent through the business-registration statutes. Another New York state trial court has concluded that *Daimler* did not "change the law with respect to personal jurisdiction based on consent," but that court relied solely on *Beach v. Citigroup Alt. Invs. LLC*, No. 12 Civ. 7717 (PKC), 2014 WL 904650, at *6 (S.D.N.Y. 2014), without further analysis. *Bailen v. Air & Liquid Sys. Corp.*, Index No. 190318/12, 2014 N.Y. Misc. LEXIS 3554 (N.Y. Sup. Ct. Aug. 5, 2014).

New York's business registration statutes do not expressly require consent to general jurisdiction,[8] and in the absence of any clearer legislative authority or any post-*Daimler* authority on the issue, this Court declines to conclude that Hertz's registration to do business and appointment of an agent for service of process constitute consent to general jurisdiction. "If mere registration and the accompanying appointment of an in-state agent—without an express consent to general jurisdiction—nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler*'s ruling would be robbed of meaning by a back-door thief." *Brown*, 814 F.3d at 640; *Bonkowski*, 2016 WL 4536868, at *2.

Because the Court does not have personal jurisdiction over Hertz for the claims asserted in the Complaint, Hertz's motion to dismiss for lack of personal jurisdiction is GRANTED.

### III. **Failure to State a Claim**

Even if Taormina had established personal jurisdiction over Hertz, the defamation claim in the Complaint against Hertz would be subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). A plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI*

---

[8] Taormina did not cite the particular business registration statute that he argues confers general jurisdiction upon Hertz. Nevertheless, based on the Court's review, the relevant registration statutes in New York do not expressly require consent to general jurisdiction in exchange for the privilege of doing business in New York. *See, e.g.*, BUS. CORP. §§ 304, 305, 1301, 1304.

*Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555) (footnote omitted).[9] Courts "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003)). "In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).[10]

"To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation *per se* or caused special damages." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010).[11] The Complaint is devoid of any allegation that Hertz made or published any false statement regarding Taormina. The letters "accus[ing]

---

[9] Hertz is incorrect in its argument that Plaintiff must meet the more particularized pleading requirements of New York state courts set forth in N.Y. C.P.L.R. § 3016. *See* The Hertz Corporation's Memorandum of Law in Support of its Motion to Dismiss Pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure, Dkt. 17, at 3. In federal court, "the complaint is subject to the usual standards set forth by the Federal Rules of Civil Procedure and *Twombly* and *Iqbal*." *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012).

[10] Therefore, in evaluating whether the Complaint survives the Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, this Court does not consider the documents that the parties attached to declarations filed in support of their respective briefs.

[11] A federal court sitting in diversity must apply the choice-of-law rules of the forum State, which in this case is New York. *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016). But, where "the parties have assumed from the outset that New York law governs, as evidenced, for example, by reliance on New York law to support their respective contentions," a court may apply New York law based on party consent. *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 137 (2d Cir. 1991). Because the parties relied exclusively on New York law in their briefs, this Court applies New York law to the defamation claim.

Taormina of a crime" for failure to return a vehicle allegedly were sent by *Thrifty*, not Hertz. Compl. ¶¶ 7–10. The NCS letter informing Taormina of the claim against him stated that NCS was "working in conjunction with *Thrifty*," not Hertz. Compl. ¶ 18 (emphasis added). Taormina even alleges in the Complaint that the documents supporting NCS's claim against Taormina were "instance[s] of *Thrifty* accusing Taormina of a crime." Compl. ¶¶ 20, 22 (emphasis added). Although Taormina alleges that NCS was retained by Hertz, Compl. ¶ 26, Taormina does not allege anywhere in the Complaint that Hertz published any false statements to NCS or to any other third party.

In opposing the motion to dismiss, Taormina again asserts several facts in his memorandum of law that were not alleged in the Complaint. For example, Taormina asserts that Hertz owns Thrifty, Opp. Br. at 6;[12] that Hertz provided a third party with "defamatory information" that resulted in a "threatening letter," Opp. Br. at 5; that Hertz accused Taormina of committing grand theft auto and published those accusations to a third party, Opp. Br. at 8; and that Hertz placed Taormina on its "DO NOT RENT" list and published that list to independent franchisees, Opp. Br. at 11. These factual assertions, however, were not alleged in the Complaint and instead are made for the first time in Taormina's opposition brief. "[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989).

---

[12] As noted in note 5, *supra*, elsewhere Plaintiff alleges that non-party Hertz Global Holdings, Inc. owns Thrifty, Compl. ¶ 4.

Therefore, the defamation claim against Hertz fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[13]

## CONCLUSION

For the foregoing reasons, this Court GRANTS Hertz's motion to dismiss the defamation claim for lack of personal jurisdiction, or in the alternative, for failure to state a claim. Because the defamation claim is dismissed, the Court DENIES Taormina's request for a mandatory injunction, which Taormina claimed as a remedy for the defamation claim.[14] This Court GRANTS Hertz's motion to dismiss the breach of contract claim for lack of personal jurisdiction.

Although, generally, leave to amend should be "freely give[n]," *see* Fed. R. Civ. P. 15(a), "leave to amend a complaint may be denied when amendment would be futile." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). In this case, the Court has considered all of the "facts" the Plaintiff has asserted, including those inappropriately raised for the first time in its briefing, to determine whether personal jurisdiction exists. Because the Plaintiff has not demonstrated personal jurisdiction, leave to amend would be futile.

The Clerk of Court is respectfully directed to close Docket Entry No. 14.

**SO ORDERED.**

Date:  December 21, 2016  
       New York, New York

VALERIE CAPRONI  
United States District Judge

---

[13]  Hertz also moved to dismiss the breach of contract claim. Because this Court has held that there is no personal jurisdiction, it is unnecessary to decide that motion.

[14]  Taormina's only argument for a mandatory injunction is that Taormina suffered "defamation, plain and simple, and [he] should be subject to all of the protection that the law provides, including the issuance of a mandatory injunction." Opp. Br. at 11.